**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LARRY JOHNSON, ) | |
| ) | CASE NO. 1:06CV1031 |
| Petitioner, ) | |
| ) | JUDGE SOLOMON OLIVER, JR. |
| v. ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| REGINALD WILKINSON, Warden, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondent. ) | |

Petitioner, Larry Johnson ("Johnson"), challenges the constitutionality of his conviction in the case of *State v. Johnson*, Cuyahoga County Common Pleas Case No. 02-CR-425532. Johnson, *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 26, 2006 with the United States District Court for the Northern District of Ohio. (Doc. No. 1) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, the Magistrate Judge recommends Johnson's petition (Doc. No. 1) be DENIED.

### I. Procedural Background

**A.	Conviction**

On June 9, 2002, the Cuyahoga County Grand Jury returned a three-one count indictment charging Johnson with the following: felonious assault in violation of the Ohio Revised Code ("O.R.C.") § 2903.11; aggravated burglary in violation of O.R.C. § 2911.11; and possession of criminal tools in violation of O.R.C. § 2923.24. (Doc. No. 7, Exh. A & B.)

After consultation with his attorney who informed Johnson of his constitutional right to a trial by jury, Johnson waived his right and opted for a bench trial. (Doc. No. 7, Exh. D1 at 16.) Johnson entered a plea of "not guilty" to all the charges. The court found Johnson guilty on all three counts and sentenced him to concurrent terms of four years in prison each for Counts One and Two, and one year in prison for Count Three. (Doc. No. 7, Exh. B.)

**B.	Direct Appeal**

Johnson appealed the trial court's judgment and sentence to the Eighth District Court of Appeals ("state appellate court").[1] (Doc. No. 7, Exh. C.) The state appellate court affirmed in part and vacated in part the trial court's judgment. (Doc. No. 7, Exh. E at 16-17.) The case was vacated and remanded for the limited purpose of correcting the trial court's journal entry to "accurately reflect what the court announced at the sentencing hearing regarding post-release

---

[1] Johnson raised the following assignments of error before the state appellate court: (1) the trial court was without jurisdiction to conduct a bench trial because the requirements of O.R.C. § 2945.05 were not strictly followed; (2) the trial court incorrectly premised its verdicts upon information not in evidence; (3) the trial court plainly erred when it admitted evidence of DNA testing that was not scientifically reliable; (4) Johnson was denied effective assistance of counsel; and (5) the post-release control term included in the sentence must be vacated because the trial court failed to fully advise Johnson about post release control at sentencing. (Doc. No. 7, Exh. C.)

control."[2]  (Doc. No. 7. Exh. E. At 16-17.)

Johnson appealed to the Ohio Supreme Court.[3]  (Doc. No. 7, Exh. G.)  On January 26, 2005, the Ohio Supreme Court denied Johnson's motion for leave to appeal as not involving any substantial constitutional question.  (Doc. No. 7, Exh. I.)

**C.    Post-Conviction Petition**

On February 9, 2004, Johnson filed a Petition for Post-Conviction Relief pursuant to O.R.C. § 2953.21 *et seq.*  (Doc. No. 7, Exh. J.)  The Cuyahoga County Court of Common Pleas of Appeals overruled Johnson's petition.  (Doc. No. 7, Exh. L.)  Johnson did not appeal the denial of his post-conviction petition.

**D.    Federal Habeas Petition**

On April 26, 2006, Johnson filed a Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  The asserted the following grounds for relief:

> Ground One: Johnson's conviction violated the Fifth, Sixth, and Fourteenth Amendment guarantees of trial, confrontation of witnesses, and due process because the trial court based its verdicts on information that was not admitted into evidence.[4]

(Doc. No. 1 at 8-9.)

---

[2] On March 21, 2005, the trial court resentenced Johnson to a term of three years for Counts One and Two and a term of six months for Count Three; the court imposed concurrent terms of imprisonment.  (Doc. No. 7, Exh. F.)

[3] On discretionary appeal to the Ohio Supreme Court, Johnson raised six assignments of error that essentially restated the five assignments of error raised before the state appellate court.  Johnson also added a claim alleging that the trial court erred by imposing a sentence in excess of the concurrent terms of imprisonment in violation of O.R.C. § 2929.14 *et seq.*  (Doc. No. 7, Exh. G.)

[4] As discussed below, Johnson has not raised any of the other issues before this Court that he raised on direct appeal.

## II. Summary of the Facts

The state appellate court summarized the facts underlying Johnson's conviction as follows:[5]

> The victim in this case is a neighbor of defendant and his family and is a friend of his wife. At the time of the incident, defendant's wife was in the hospital and the victim had been helping with the defendant's stepson, her friend's child.
>
> On the evening in question [June 8, 2002], defendant testified that he had gone to a bar to watch a Mike Tyson fight. He testified that after the fight he went home. The victim testified that at eleven on that Saturday evening in early June, defendant phoned the victim and invited her to smoke a joint with him. She said she would, and he told her he would be over in fifteen minutes. A little while later, he called back to and asked her whether she would like to watch a pornographic video and she said no. He then asked her whether she smoked crack, to which she answered that she did occasionally. He told her he would be there shortly and would also bring some crack along. When he had not arrived half an hour later, the victim tried phoning him but there was no answer.
>
> Defendant called her some time later and told her he was still cooking the crack. She then told him that she did not want crack and told him not to come over. She related a story to him in which another woman had let a man in and he had attacked her with a wrench. Defendant laughed and said he was not like that.
>
> An hour and a half later, the victim's dog began barking and then she heard a knock at the door. Expecting her neighbor, she opened it. At the door was a man wearing a ski cap pulled down over his face with eyeholes cut in it and black gloves. He was carrying a kitchen knife about six inches long, including the handle. He was also wearing a grey tee-shirt with writing on it.
>
> He attacked her with the knife. When she raised her hands to defend herself, her left hand was badly cut. During the scuffle, the glass kitchen table was overturned and broken. When she jumped over the broken table, she cut her knee but managed to escape. Running out of the house, she looked over her shoulder and saw defendant run through the yards to his own house. She testified that she briefly ran back into her house to check on her nine-year-old son, who was sleeping, and to get her cordless phone. She called 911 from her front yard.

---

[5] Factual determinations by state courts are entitled to a presumption of correctness. *See, e.g., House v. Bell,* 283 F.3d 37 (6th Cir. 2002).

4

> When police arrived, she identified her neighbor, the defendant, as the man who had attacked her. She later testified that, although he wore a ski mask, she recognized his arms, his build, his walk, and his stoop. When the police went to his house shortly after, defendant stated that he had spoken with the victim on the phone that evening, but he had not gone over there because he was too tired.
>
> ...
>
> [The trial court stated] "[t]here are too many inconsistencies in the defendant's version of what happened, not the least of which is the clear – either it's a misunderstanding or confusion or something I can't explain about the fight you claim you were watching that evening. That was, as you said, over after two or three rounds with Mike Tyson severely beating his opponent. I think that you will find, Mr. Johnson, that Mike Tyson lost that in the eighth round to Mr. Lewis. *But that is just one of many, many factors that have entered into my decision.*"
>
> ...
>
> As previously noted, the victim's story remained consistent from her first conversation with the police, to her statements to the hospital workers, and to her final testimony at trial. Additionally, the detective's testimony was consistent with the victim's. For example, the bloody tee-shirt the police found fit the description of the tee-shirt the victim had described the perpetrator as wearing. The police also found a pornographic video and the victim had told them that defendant had asked her if she wanted him to bring a pornographic video with him. The police, when they searched defendant's home, also found the red boots the victim had described the perpetrator as wearing.
>
> The defendant's testimony, on the other hand, was inconsistent with statements the detectives reported he made to them. For example, defendant initially told a detective he had not been at the victim's house that evening, but later testified he had been. Defendant also testified that he had never told anyone that he had gone to sleep that night, despite the testimony of two officers to the contrary. Defendant also denied telling police that the victim had cut her hand on a crack pipe, although the police testified to this statement.
>
> There were further inconsistencies. Two officers testified that they found the bloody grey tee-shirt in the hallway with the black gloves next to it. Defendant, on the other hand, insisted in his testimony that the tee-shirt was in the basement with the other dirty laundry. He also denied any knowledge of the black gloves, which the officers testified were in the hallway next to the tee-shirt.

(Doc. No. 7, Exh. E) (emphasis in original).

### III. Procedural Default and Statute of Limitations

Respondent asserts that Johnson's petition appears to be timely filed and did not assert that Johnson's claims are procedurally defaulted. (Doc. No. 7 at 8.) It appears that Johnson's sole claim before this Court was raised on direct appeal before the state appellate court and the Ohio Supreme Court.

### IV. Review on the Merits

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Johnson filed his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Federal courts are bound by a state court's determination of a petitioner's claims, unless the decision by the state court involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998). In *Williams v. Taylor*, 529 U.S. 362, 411 (2000), the Supreme Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

6

applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Stated differently, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The Court noted that the term "unreasonable" is "no doubt difficult to define," but did not expound on the word's meaning in this context, instead stating that "it is a common term in the legal world, and, accordingly, federal judges are familiar with its meaning." *Id*. at 410. The Sixth Circuit interprets the *Williams* test to mean if a court "believe[s] that a state court incorrectly applied federal law, [it] must refuse to issue the writ of habeas corpus if [it] finds that the state court's decision was a reasonable one." *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

### A.  Ground One: Use of Evidence Not Admitted Into the Record

Johnson asserts that he was deprived of due process, his right to a trial, and his right to confront witnesses when the trail court, which was conducting a bench trial, based its verdict partially on evidence that was never adduced at trial. (Doc. No. 1 at 8-9.) Specifically, Johnson objects to the trial judge's statement that one of the "many, many factors" involved in his decision was the fact that Johnson's testimony with respect to the boxing match he allegedly watched on June 8, 2002 between Mike Tyson ("Tyson") and Lennox Lewis ("Lewis") was inaccurate.[6] Respondent argues that the trial judge merely took judicial notice of a fact not

---

[6] The trial judge stated "[t]here are too many inconsistencies in the defendant's version of what happened, not the least of which is the clear – either it's a misunderstanding or confusion or something I can't explain about the fight you claim you were watching that evening. That was, as you said, over after two or three rounds with Mike Tyson severely beating his opponent. I think that you will find, Mr. Johnson, that Mike Tyson lost that in the eighth round to Mr. Lewis. But that is just one of many, many factors that have entered into my decision." (Doc. No. 7, Exh. E.)

readily disputable and that even if there was any error, it was harmless. (Doc. No. 7 at 8-12.)

Johnson's cites two appellate cases from Ohio to support his argument, but his reliance on these cases is misplaced. *See State v. Spencer*, 118 Ohio App. 3d 871; 694 N.E.2d 161 (Ohio Ct. App. 1997) (A presumption of prejudice arises whenever juror misconduct is discovered and the burden shifts to the prevailing party to demonstrate that the misconduct was not prejudicial); *State v. King*, 10 Ohio App.3d 161 (Ohio Ct. App. 1983) ("Any communication or contact outside the courtroom or jury room about the matter at trial between a juror and another person, particularly if connected with one of the parties to the litigation, and any independent inquiry or experiment by a juror about the evidence or the law, violate the juror's duty to limit his considerations to the evidence, arguments and law presented in open court.") First, these cases are, at best, tangentially related to the situation herein as they discuss the prohibition against jurors from engaging in their own independent investigation of the facts. Second, the interpretations of Ohio courts pertaining to matters of Ohio law do not provide a basis for a federal habeas claim unless an error of state law deprives a petitioner of fundamental fairness. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993) ("While it is true that habeas relief cannot be granted simply 'on the basis of a perceived error of state law,' when an error rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief.") (citations omitted); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.'") (citations omitted).

Respondent contends that the trial judge's observation regarding the outcome of the Lewis/Tyson boxing match was not improper because it was merely a judicial notice of fact. Pursuant to Ohio Evidentiary Rule 201 ("Rule 201"), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, "[a] court may take judicial notice [of a fact], whether requested or not." *See* Rule 201(C). The outcome of a past sporting event is the type of fact that cannot reasonably be disputed and is readily verifiable. The trial court's observation that Lewis prevailed in the fight with Tyson by virtue of an eighth round knockout is accurate and indisputable.[7] Therefore, the trial court's observation of the outcome of the fight is not an error of state law that resulted in a trial bereft of fundamental fairness.

Moreover, Johnson has failed to present any coherent argument suggesting that Rule 201 offends the United States Constitution or other federal law. Johnson cites a United States Supreme Court decision in his argument wherein the Court held that jury instructions requiring a jury to find certain facts if other predicate facts were established by the State violated the Due Process Clause of the Fourteenth Amendment. *See Carella v. California*, 491 U.S. 263 (1989). In *Carella*, the Supreme Court explained that such an instruction violated the Constitution because it "directly foreclosed independent jury consideration of whether the facts proved

---

[7] Bill Pennington, *Lewis Deflects, Dominates and Destroys Tyson*, N.Y. TIMES, June 9, 2002, at Sec. 8, Column 2; William Gildea, *Lewis Leaves No Doubt; Heavyweight Champion Sends Tyson to Mat in 8th Round*, WASH. POST, June 9, 2002, at D1.

established certain elements of the offenses ... and relieved the State of its burden of proving by evidence every essential element of Carella's crime beyond a reasonable doubt." *Id*. This holding, however, is inapplicable to the facts of this case. Furthermore, Federal Evidentiary Rule 201 is identical in material portions to Ohio's Rule 201 and this Court is unaware of any decision finding the identical federal rule to be in violation of the United States Constitution.

Lastly, even assuming *arguendo* that the trial court's observation regarding the outcome of the boxing match contravened state law, Johnson would have to demonstrate that the error deprived him of fundamental fairness in the trial process for him to be entitled to habeas relief. *See Serra*, 4 F.3d at 1354. The state appellate court found Johnson's assignment of error lacked merit for two reasons. First, the trial judge emphasized that Johnson's inaccurate statement concerning the outcome of the boxing match was only one a myriad of inconsistencies that factored into his decision as the trier of fact. (Doc. No. 7, Exh. E at 6.) Second, the state appellate court found that even without the trial court's statement about the boxing match, "the evidence is still overwhelming in favor of conviction." (Doc. No. 7, Exh. E at 7.)

This Court agrees with the state appellate court's assessment of Johnson's alleged error. Among the overwhelming evidence that supports Johnson's conviction is the physical evidence in the form of a grey tee-shirt, red boots and black gloves found in Johnson's home and matching the description given by the victim, the victim's testimony that she recognized Johnson even with a mask due to his build and walk, and the testimony of the police officers who were told various versions of events by Johnson that conflicted with Johnson's trial testimony. Under these circumstances, any error stemming from the trial court's statement concerning the boxing match is harmless and did not deprive Johnson of fundamental fairness.

10

For the foregoing reasons, ground one of Johnson's Petition should be denied.

**B.      Other Potential Errors**

Johnson raised no other errors in his Petition. Although Johnson's Petition lists the various assignments of error raised on direct appeal before the state appellate court and the Ohio Supreme Court, Johnson only presents an argument with respect to the assignment of error discussed directly above. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir.1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). Herein, not only does Johnson fail to present any argument with respect to the other assignments of error raised in state court, he does not even clearly allege that he is attempting to raise these issues. In addition, Respondent clearly treated Johnson's petition as raising only one ground for relief. Johnson, despite having the opportunity to do so, never filed a Traverse indicating that his Petition attempted to state more than one ground of relief. For the foregoing reasons, the Court finds that Johnson did not raise any additional alleged constitutional violations in his habeas petition.

## V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Johnson's petition (Doc. No. 1) be DENIED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: April 25, 2007

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**